IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
(CENTRAL DIVISION)

| | |
|---|---|
| DES MOINES INDEPENDENT COMMUNITY SCHOOL DISTRICT,<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>ONE-FOURTH CONSULTING, LLC d/b/a JG CONSULTING,<br><br>Defendant/Counterclaim Plaintiff. | CASE NO. 4:25-cv-0430-RGE-HCA<br><br>**ONE-FOURTH CONSULTING, LLC'S COUNTERCLAIM AGAINST DES MOINES INDEPENDENT COMMUNITY SCHOOL DISTRICT** |
| ONE-FOURTH CONSULTING, LLC d/b/a JG CONSULTING,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>BAKER-EUBANKS, LLC.<br><br>Third-Party Defendant. | |

COMES NOW, Defendant, One-Fourth Consulting, LLC d/b/a JG Consulting, by and through the undersigned counsel, and for its Counterclaim against Des Moines Independent Community School District, states as follows:

## PARTIES AND JURISDICTION

1. Des Moines Independent Community School District is a school district organized under Iowa Code chapter 274 with its principal place of business located in Des Moines, Polk County, Iowa.

2. One-Fourth Consulting, LLC d/b/a JG Consulting is a Texas limited liability company with its principal place of business in Georgetown, Texas.

3. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum value of $75,000.00.

4. Venue is proper as the acts alleged herein occurred within Polk County, Iowa.

**FACTUAL BACKGROUND**

5. JG Consulting is one of the most well-respected and sought-after consulting firms in the country focused on the education space. Through its core competencies—executive search, executive coaching, leadership development, and strategic planning—it regularly assists school districts around the country locate, place, develop, and support pre-K-12 education leaders.

6. JG Consulting has been in business for over a decade, and it has historically enjoyed a stellar reputation around the country for its professionalism and exceptional service.

7. On December 16, 2022, the Des Moines Independent Community School District (hereinafter the "District") ultimately selected JG Consulting from a number of competitors to facilitate its search for a new superintendent after its then-current superintendent announced his retirement.

8. The parties entered into an Executive Search Agreement ("Agreement") under which JG would assist in identifying and screening potential candidates for the superintendent position.

9. As part of that engagement, JG Consulting agreed to "arrange for comprehensive criminal, credit, and background checks conducted by a third party" and would refer candidates

that JG Consulting "reasonably believes" can "satisfactorily perform the position of superintendent."

10. JG Consulting agreed to disclose to the District all "known information of a positive or negative nature regarding candidates for the Superintendent position."

11. The Agreement did not require JG Consulting to confirm the immigration or work status for the superintendent candidates, nor could it since only an employer can conduct an I-9 or E-Verify confirmation of an employee.

12. The District (not JG Consulting) would, of course, be the only employer of the superintendent candidate it ultimately selected.

13. JG Consulting faithfully and dutifully performed its services under the Agreement.

14. As required, JG Consulting engaged a third-party company that specialized in criminal background checks, Baker-Eubanks, LLC, to conduct comprehensive criminal, credit, and background checks on the slate of candidates it identified.

15. JG Consulting presented all of the background-check information to the District for review and consideration, along with its findings about the candidates and their educational history.

16. Relevant here, JG Consulting provided all known information of a positive or negative nature to the District about candidate Dr. Ian Roberts, including information that showed Dr. Roberts had a prior criminal infraction related to firearm possession.

17. JG Consulting also disclosed to the District that Dr. Roberts' resumes contained inconsistencies.

18. Ultimately, despite these red flags, the District unanimously selected Dr. Ian Roberts as the superintendent in May 2023 over a host of other potential candidates presented by JG Consulting.

19. The District's decision turned out to be ruinous. While the District decided to overlook Dr. Roberts' criminal history and academic inconsistencies when it hired him, it apparently also failed to properly E-Verify or otherwise confirm Dr. Roberts' immigration and work status, which only an employer can do. This was a fatal mistake.

20. On September 26, 2025, U.S. Immigration and Customs Enforcement ("ICE") arrested Dr. Roberts, identifying him as a criminal illegal alien from Guyana.

21. ICE reported that Dr. Roberts entered the United States in 1999 on a student visa, was issued a final order of removal in May 2024, and fled from law enforcement during a targeted enforcement action.

22. Upon his capture, Dr. Roberts was in possession of a district vehicle with a loaded handgun in it, along with $3,000 in cash and a fixed-blade hunting knife.

23. Faced with a barrage of negative media attention for its decision to hire Dr. Roberts, the District quickly turned on JG Consulting, pointing the finger at anyone and everyone except itself.

24. The District's embarrassment was particularly troubling for Board Chair Jackie Norris, who was launching a political campaign for U.S. Congress.

25. Almost as soon as news broke about Dr. Roberts' arrest, the District's defamation campaign against JG Consulting began.

26. For instance, on behalf of the District, Norris published to the public the following false and defamatory statements, among others, on or about October 3, 2025:

- JG Consulting "failed its duty to properly vet candidates" for the District;[1]
- "The contract required JG Consulting to bring all known information of a positive or negative nature to the board. Because that did not occur, we are pursuing legal action. . . ."[2]
- It is "crystal clear that the search firm [JG Consulting] did not do its job."[3]
- "It has been seven days since our district started learning troubling information about someone we trusted."

27. The District's agent went on to state that the District received the background check on Dr. Roberts but "there was certainly more than what the Board was appraised of at the time" that JG Consulting knew about Dr. Roberts but did not disclose.[4]

28. The District has published statements that JG Consulting was somehow responsible for conducting (and failed to conduct) an I-9 or E-Verify verification of Dr. Roberts.

29. In reality, JG Consulting is legally prohibited from conducting an I-9 or E-Verify verification on non-employees, like Dr. Roberts.

30. Instead, the obligation to verify immigration and work status falls squarely on Mr. Roberts' employer, the District.

31. In addition, the District published false and defamatory statements that JG Consulting provided false academic credentials and resumes to the District.

32. The gist of the Distrct's defamatory statements is that JG Consulting concealed information about Dr. Roberts from the District, misled the District about Dr. Roberts, failed to comply with the standard of care for educational consulting firms, lied to the District about Dr.

---

[1] *See* https://www.youtube.com/watch?v=prGk5BSeKWI; https://www.dmschools.org/news_release/dmps-files-lawsuit-against-superintendent-search-firm-jg-consulting/
[2] *Id.*
[3] *See* https://www.youtube.com/watch?v=LCmxQ-FA50A
[4] *Id.*

Roberts and his credentials and status, committed acts of moral turpitude, falsified information about Dr. Roberts, and is incompetent and unfit in its trade or profession.

33. The District's defamatory statements materially injured JG Consulting's reputation, exposed it to public hatred, contempt, and ridicule, and injured JG Consulting in the maintenance of its business.

34. At all times material hereto, Des Moines School Board Chair Jackie Norris was acting as an agent of the District and within the scope of her authority.

35. The statements made by the District were false and were made with reckless disregard for the truth.

36. The District and/or its agents knew the statements were false, or acted with reckless disregard for the truth. The statements made by the District are not subject to any immunity or privilege.

37. Notably, the Iowa State Board of Education Examiners granted Dr. Roberts a license to serve as the superintendent.

38. Yet, the District did not defame that entity for not flagging the same issues it faults JG Consulting for not flagging.

39. Similarly, the District has not sued Dr. Roberts for lying or deceiving the District.

40. Instead, the District's sole focus has been on attempting to shift blame for its failures to JG Consulting.

41. The District's smear campaign is directly contrary to Norris's own public statements that "We all need to cool down the rhetoric. We should promote true discourse and facts, not spread misinformation meant to divide us."

42. But this is exactly what the District failed to do. The District did not promote true discourse; instead, it promptly spread disinformation about JG Consulting and refused to take accountability. It blamed everyone, except itself, for its blatant failures in deciding to hire Dr. Roberts.

43. Ironically, Norris went in to publicly state that "Our elected officials need to behave like role models for our children. Enough with the name-calling and misinformation that is meant to divide us." But the District failed to heed this advice in continuing with its smear campaign against JG Consulting.

44. Contrary to the District's defamatory statements, the reality is that the District failed to comply with the legal requirement to verify Dr. Roberts' immigration status and work authorization status.

45. In fact, Section 12 of the Agreement requires the District to comply with all state and federal laws. The District failed to so do when it selected and hired Dr. Roberts and failed to confirm his immigration status or work authority status (which only the District, not JG Consulting, could do as Dr. Robert's direct employer).

46. The District had the legal duty and obligation to verify Dr. Roberts' immigration status and work authorization as his employer, and it apparently failed to do so.

47. JG Consulting legally could not, as the non-hiring entity, confirm Dr. Roberts' immigration or work-authorization status. That is the legal duty and obligation of the employer, Des Moines Independent Community School District.

48. Further, contrary to the District's misrepresentations, JG Consulting did engage a third-party company to conduct a background check on Dr. Roberts, which it shared with the District before it decided to employ him.

49. That background check showed Dr. Roberts had a criminal case from 2021 for the unlawful presence of a loaded firearm in a vehicle.

50. JG Consulting also disclosed to the District before it hired Dr. Roberts that he had not obtained a PhD degree from Morgan State University.

51. Despite these disclosures, the District decided to hire Dr. Roberts as its superintendent.

52. JG undoubtedly all disclosed to the District all "known information of a positive or negative nature regarding candidates for the Superintendent position."

53. Thus, the District's defamatory statements to the contrary are demonstrably false.

54. Rather than take responsibility for its actions, the District has decided to deflect accountability and blame JG Consulting for the District's failures.

55. The District has publicly defamed JG Consulting with lies and false allegations.

56. Unfortunately, one of the aims of this defamation campaign was to mislead the District's constituents.

57. The District's campaign of defamation has led to devastating losses to JG Consulting for which the District is liable.

58. Recently, when the legislature conducted a public hearing into the District's failures with respect to the hiring of Dr. Roberts, the District was forced to publicly admit for the first time that it bears responsibility for Dr. Roberts' hiring.

59. In fact, according to a report from the District's own lawyer, the District's defamatory statements are false: "Board Chair Kimberly Martorano shared findings from a private investigation into Roberts' hiring process during a House Education Committee meeting Wednesday. She said the investigator found there was no way the board could have known

Roberts' immigration status and that background checks would not have revealed it."[5] As the new Board Chair admitted: "The background check would not have revealed these immigration issues to the board because they did not result in a criminal charge until after his arrest."[6]

60. Unfortunately, this is mea culpa is too little too late.

61. The District's defamatory smear campaign against JG Consulting has already caused devastating financial and reputational harm for which it seeks relief.

**COUNT I – DEFAMATION**

62. JG Consulting incorporates by reference all preceding paragraphs.

63. The public statements made by the Des Moines Independent Community School District specifically referred to JG Consulting and were understood by the recipients to refer to JG Consulting.

64. The District published the above-referenced statements of fact about JG Consulting, including through the District school board members and agents.

65. The public statements made by the District were of such a nature that harmed the reputation of JG Consulting and operated to deter current and future commercial relationships.

66. The District published the false statements about JG Consulting with actual malice, even though they knew and recklessly disregarding that they were false.

67. The District's statements are reasonably understood to be statements of fact about JG Consulting, and were understood by people to saw, heard, and read them to be statements of fact about JG Consulting.

---

[5] *See* https://www.kttc.com/2026/02/05/des-moines-school-board-takes-responsibility-hiring-former-superintendent-arrested-by-ice/

[6] *Id.*

68. The District's statements are false. JG Consulting did not fail its duty to properly vet candidates for the District; JG Consulting did not fail to bring all known information of a positive or negative nature to the District; JG Consulting did not fail do its job; and JG Consulting did not mislead the District about Dr. Roberts or fail to disclose any known information about him.

69. The statements constitute defamation *per se*, as they directly call into question JG Consulting's competency or fitness in their trade or profession. *See Cap. Ideas, LLC v. Springboard Adver., LLC,* No. 20-0296, 2021 WL 4592831 (Iowa Ct. App. Oct. 6, 2021).

70. The District has no applicable privilege or legal authorization to make these false and defamatory statements.

71. The District's defamatory statements, whether taken individually or together in their cumulative impact, significantly damaged JG Consulting in the various ways described herein.

72. Because the statement constitutes defamation *per se*, damages to JG Consulting's reputation are presumed by law. *See Cap. Ideas, LLC v. Springboard Adver., LLC*, No. 20-0296, 2021 WL 4592831 (Iowa Ct. App. Oct. 6, 2021).

73. The defamatory statements impute serious misconduct to JG Consulting and also malign JG Consulting in the conduct of its business or trade.

74. The District's statements have exposed JG Consulting to extreme hatred and contempt.

75. For JG Consulting—whose business is assisting school districts in their search of superintendents—the defamatory statements made by the District have significant damaged JG Consulting's business and impugned JG Consulting's integrity, honesty, ethics, or professionalism.

76. The District's statements were calculated to—and did, in fact—provoke outrage and cause JG Consulting enormous harm

77. Alternatively, the statements are actionable libel per quod as one may also refer to facts or circumstances beyond the words actually used to establish the defamation.

78. Notwithstanding Iowa law's recognition of presumed damages, as a direct and proximate result of the District's publication, JG Consulting has suffered special damages, including but not limited to lost customers, loss of future business opportunities, lost profits, loss of goodwill, loss of reputation, and JG Consulting's enterprise value has been irreparably damaged.

79. Pursuant to Iowa Code § 668A.1, the conduct of the District constitutes a willful and wanton disregard for the rights or safety of JG Consulting.

80. JG Consulting is also entitled to punitive damages because the District's defamatory statements were accompanied with malice, wantonness, and a conscious desire to cause injury.

81. The District purposefully made the statements heedlessly and with reckless and willful indifference to JG Consulting's rights.

82. The District is entitled to punitive damages because the District published the defamatory statements about JG Consulting with actual malice.

83. An award of punitive damages is necessary to punish and/or deter the District and others from like conduct in the future.

WHEREFORE, One-Fourth Consulting, LLC d/b/a JG Consulting respectfully requests that the Court enter judgment against Des Moines Independent Community School District in an amount that will justly, fairly, and adequately compensate it for all general compensatory damages

incurred, special damages, punitive damages, pre- and post-judgment interest, together with interest at the rate provided for by law and the costs of this action.

**JURY DEMAND**

COMES NOW Defendant/Third-Party Plaintiff One-Fourth Consulting, LLC d/b/a JG Consulting, and respectfully requests a trial by jury on all issues involved herein.

GREFE & SIDNEY, P.L.C.

By: /s/ *Mark W. Thomas*
Mark W. Thomas, AT0007832

By: /s/ *Benjamin T. Erickson*
Benjamin T. Erickson, AT0012927

500 E. Court Ave., Ste. 200
Des Moines, IA
50309 Phone: 515/245-4300
Fax: 515/245-4452
mthomas@grefesidney.com
berickson@grefesidney.com

JACKSON WALKER, LLP

By: /s/ *Joshua A. Romero*
Joshua A. Romero, admitted *Pro Hac Vice*
Texas Bar No. 24046754

By: /s/ *Sean F. Gallagher*
Sean F. Gallagher, admitted *Pro Hoc Vice*
Texas Bar No. 24101781

100 Congress Avenue, Suite 1100
Austin, Texas 78701
Telephone: (512) 236-2000
Fax: (512) 236-2002

jromero@jw.com
sgallagher@jw.com

ATTORNEYS FOR ONE-FOURTH CONSULTING, LLC

**Certificate of Service**

The undersigned certifies that the foregoing instrument was served upon the parties to this action by serving a copy upon each of the attorneys listed as receiving notice on February 13, 2026, by CM/ECF.

*/s Traci Haenzi*

Copy to
Jason M. Craig
AHLERS & COONEY, PC
100 Court Avenue, Suite 600
Des Moines, Iowa 50309-2231
jcraig@ahlerslaw.com
ATTORNEY FOR PLAINTIFF