# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| DES MOINES INDEPENDENT COMMUNITY SCHOOL DISTRICT,<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>ONE-FOURTH CONSULTING, LLC d/b/a JG CONSULTING,<br><br>Defendant/Counterclaim Plaintiff.<br><br>ONE-FOURTH CONSULTING, LLC d/b/a JG CONSULTING,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>BAKER-EUBANKS, LLC<br><br>Third-Party Defendant. | CASE NO. 4:25-CV-00430-RGE-HCA<br><br>**DES MOINES INDEPENDENT COMMUNITY SCHOOL DISTRICT'S ANSWER AND AFFIRMATIVE DEFENSES TO ONE-FOURTH CONSULTING, LLC'S COUNTERCLAIM** |

COMES NOW, Plaintiff/Counterclaim Defendant Des Moines Independent Community School District (the "District"), and for its Answer to the Counterclaim of One-Fourth Consulting, LLC d/b/a JG Consulting (the "Counterclaim") states[1]:

**PARTIES AND JURISDICTION**

1. Des Moines Independent Community School District is a school district organized under Iowa Code chapter 274 with its principal place of business located in Des Moines, Polk County, Iowa.

---

[1] For ease of reference, the District maintains the Counterclaim's original headings. To the extent the headings could be construed as containing factual allegations, any such allegations are denied.

**ANSWER**: The District admits Paragraph 1 of the Counterclaim.

2. One-Fourth Consulting, LLC d/b/a JG Consulting is a Texas limited liability company with its principal place of business in Georgetown, Texas.

**ANSWER**: The District denies Paragraph 2 for lack of information sufficient to form a belief but states that in their removal filings JG Consulting asserted it was a Texas Corporation. Doc. No. 2, ¶9.

3. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum value of $75,000.

**ANSWER**: The District denies Paragraph 3 for lack of information sufficient to form a belief as the citizenship of JG Consulting's members are unknown.

4. Venue is proper as the acts alleged herein occurred within Polk County, Iowa.

**ANSWER**: The District admits Paragraph 4 of the Counterclaim.

## FACTUAL BACKGROUND

5. JG Consulting is one of the most well-respected and sought-after consulting firms in the country focused on the education space. Through its core competencies – executive search, executive coaching, leadership development, and strategic planning – it regularly assists school districts around the country locate, place, develop, and support pre-K-12 education leaders.

**ANSWER**: The District denies Paragraph 5 for lack of information sufficient to form a belief.

6. JG Consulting has been in business for over a decade, and it has historically enjoyed a stellar reputation around the country for its professionalism and exceptional service.

**ANSWER**: The District denies Paragraph 6 for lack of information sufficient to form a belief.

7. On December 16, 2022, the Des Moines Independent Community School District (hereinafter the "District") ultimately selected JG Consulting from a number of competitors to facilitate its search for a new superintendent after its then-current superintendent announced his retirement.

**ANSWER**: The District admits Paragraph 7 of the Counterclaim.

8. The parties entered into an Executive search Agreement ("Agreement") under which JG would assist in identifying and screening potential candidates for the superintendent position.

**ANSWER**: The District admits JG Consulting's duties included identifying and screening potential candidates for the superintendent position. The District denies JG Consulting's duties were limited to only "identify and screening potential candidates" and denies any remaining allegations in Paragraph 8 of the Counterclaim.

9. As part of that engagement, JG Consulting agreed to "arrange for comprehensive criminal, credit, and background checks conducted by a third party" and would refer candidates that JG Consulting "reasonably believes" can "satisfactorily perform the position of superintendent."

**ANSWER**: The District denies Paragraph 9 of the Counterclaim in part for lack of completeness. The Executive Search Agreement states that "JG CONSULTING agrees not to refer any candidate for the Superintendent position to the Board unless JG CONSULTING reasonably believes that the candidate can lawfully satisfactorily perform the position and that the information contained in the candidate's application materials is true and complete." The District admits the remaining allegations in Paragraph 9 of the Counterclaim.

10. JG Consulting agreed to disclose to the District all "known information of a positive or negative nature regarding candidates for the Superintendent position."

**ANSWER**: The District admits Paragraph 10 of the Counterclaim.

11. The Agreement did not require JG Consulting to confirm the immigration or work status for the superintendent candidates, nor could it since only an employer can conduct an I-9 or E-Verify confirmation of an employee.

**ANSWER**: Paragraph 11 asserts a legal averment to which no response is required. To the extent a response is required, the District denies Paragraph 11 of the Counterclaim.

12. The District (not JG Consulting) would, of course, be the only employer of the superintendent candidate it ultimately selected.

**ANSWER**: Paragraph 12 asserts a legal averment to which no response is required. To the extent a response is required, the District denies Paragraph 12 of the Counterclaim.

13. JG Consulting faithfully and dutifully performed its services under the Agreement.

**ANSWER**: The District denies Paragraph 13 of the Counterclaim.

14. As required, JG Consulting engaged a third-party company that specialized in criminal background checks, Baker-Eubanks, LLC to conduct comprehensive criminal, credit and background checks on the slate of candidates it identified.

**ANSWER**: The District denies Paragraph 14 of the Counterclaim for lack of information sufficient to form a belief.

15. JG Consulting presented all of the background-check information to the District for review and consideration, along with its findings about the candidates and the educational history.

**ANSWER**: The District denies Paragraph 15 of the Counterclaim.

16. Relevant here, JG Consulting provided all known information of a positive or negative nature to the District about candidate Dr. Ian Roberts, including information that showed Dr. Roberts had a prior criminal infraction related to firearm possession.

**ANSWER**: The District admits JG Consulting informed the District that Roberts was issued a citation related to a firearm. The District denies all remaining allegations of Paragraph 16 of the Counterclaim.

17. JG Consulting also disclosed to the District that Dr. Roberts' resumes contained inconsistencies.

**ANSWER**: The District denies Paragraph 17 of the Counterclaim.

18. Ultimately, despite these red flags, the District unanimously selected Dr. Ian Roberts as the superintendent in May 2023 over a host of other potential candidates presented by JG Consulting.

**ANSWER**: The District admits it selected Dr. Ian Roberts as the superintendent in May 2023. The District denies the remaining allegations of Paragraph 18 of the Counterclaim.

19. The District's decision turned out to be ruinous. While the District decided to overlook Dr. Roberts' criminal history and academic inconsistencies when it hired him, it apparently also failed to properly E-Verify or otherwise confirm Dr. Roberts' immigration and work status, which only an employer can do. This was a fatal mistake.

**ANSWER**: The District denies Paragraph 19 of the Counterclaim.

20. On September 26, 2025, U.S. Immigration and Customs Enforcement ("ICE") arrested Dr. Roberts, identifying him as a criminal illegal alien from Guyana.

**ANSWER**: The District admits Paragraph 20 of the Counterclaim.

21. ICE reported that Dr. Roberts entered the United States in 1999 on a student visa, was issued a final order of removal in May 2024, and fled from law enforcement during a targeted enforcement action.

**ANSWER**: The District admits Paragraph 21 of the Counterclaim.

22. Upon his capture, Dr. Roberts was in possession of a district vehicle with a loaded handgun in it, along with $3,000 in cash and a fixed-blade hunting knife.

**ANSWER**: The District admits Paragraph 22 of the Counterclaim.

23. Faced with a barrage of negative media attention for its decision to hire Dr. Roberts, the District quickly turned on JG Consulting, pointing finger at anyone and everyone except itself.

**ANSWER**: The District admits that due to JG Consulting's conduct, the District faced negative media attention. The District denies the remainder of Paragraph 23 of the Counterclaim.

24. The District's embarrassment was particularly troubling for Board Chair Jackie Norris, who was launching a political campaign for U.S. Congress.

**ANSWER**: The District denies Paragraph 24 of the Counterclaim for lack of information sufficient to form a belief as to whether Jackie Norris was "particularly troubl[ed]" and denies the remaining allegations in Paragraph 24 of the Counterclaim.

25. Almost as soon as news broke abut Dr. Roberts' arrest, the District's defamation campaign against JG Consulting began.

**ANSWER**: The District denies Paragraph 25 of the Counterclaim.

26. For instance, on behalf of the District, Norris published to the public the following false and defamatory statements, among others, on or about October 3, 2025:

- JG Consulting "failed its duty to properly vet candidates" for the District",

- "The contract required JG Consulting to bring all known information of a positive or negative nature to the board.  Because that did not occur, we are pursuing legal action …"

- It is "crystal clear that the search firm [JG Consulting] did not do its job."

- "It has been seven days since our districted started learning troubling information about someone we trusted."

**ANSWER**: The District denies that the statements in Footnotes 1–3 to Paragraph 26 of the Counterclaim are false or defamatory and denies all remaining allegations in Paragraph 26 of the Counterclaim.

27. The District's agent went on to state that the District received the background check on Dr. Roberts but "there was certainly more than what the Board was appraised of at the time" that JG Consulting knew about Dr. Roberts but did not disclose.

**ANSWER**: The District denies Paragraph 27 of the Counterclaim and Footnote 4 to Paragraph 27 of the Counterclaim.

28. The District has published statements that JG Consulting was somehow responsible for conducting (and failed to conduct) an I-9 or E-Verify verification of Dr. Roberts.

**ANSWER**: The District admits that JG Consulting led the District to believe it was a registered agent with E-verify and would be checking immigration status of candidates. Defendant denies that any statements made were false or defamatory and otherwise denies the remainder of Paragraph 28.

29. In reality, JG Consulting legally prohibited from conducting an I-9 or E-Verify verification on non-employees, like Dr. Roberts.

**ANSWER**: Paragraph 29 asserts a legal averment to which no response is required. To the extent a response is required, the District denies Paragraph 29 of the Counterclaim.

30. Instead, the obligation to verify immigration and work status falls squarely on Mr. Roberts' employer, the District.

**ANSWER**: Paragraph 30 asserts a legal averment to which no response is required. To the extent a response is required, the District denies Paragraph 30 of the Counterclaim.

31. In addition, the District published false and defamatory statements that JG Consulting provided false academic credentials and resumes to the District.

**ANSWER**: The District denies Paragraph 31 of the Counterclaim.

32. The gist of the District's defamatory statements is that JG Consulting concealed information about Dr. Roberts from the District, misled the District about Dr. Roberts, failed to comply with the standard of care for educational consulting firms, lied to the District about Dr. Roberts and his credentials and status, committed acts of moral turpitude, falsified information about Dr. Roberts, and is incompetent and unfit in its trade or profession.

**ANSWER**: The District denies Paragraph 32 of the Counterclaim.

33. The District's defamatory statements materially injured JG Consulting's reputation, exposed it to public hatred, contempt, and ridicule, and injured JG Consulting in the maintenance of its business.

**ANSWER**: The District denies Paragraph 33 of the Counterclaim.

34. At all times material hereto, Des Moines School Board Chair Jackie Norris was acting as an agent of the District and within the scope of her authority.

**ANSWER**: The District denies Paragraph 34 of the Counterclaim to the extent JG Consulting alleges Jackie Norris made defamatory statements in the context of a political campaign for U.S. Congress rather than District business, but otherwise admits Paragraph 34.

35. The statements made by the District were false and were made with reckless disregard for the truth.

**ANSWER**: The District denies Paragraph 35 of the Counterclaim.

36. The District and/or its agents knew the statements were false, or acted with reckless disregard for the truth. The statements made by the District are not subject to any immunity or privilege.

**ANSWER**: The District denies Paragraph 36 of the Counterclaim.

37. Notably, the Iowa State Board of Education Examiners granted Dr. Roberts a license to serve as the superintendent.

**ANSWER**: The District admits Paragraph 37 of the Counterclaim.

38. Yet, the District did not defame that entity for not flagging the same issues it faults JG Consulting for not flagging.

**ANSWER**: The District denies it defamed JG Consulting or any other entity and denies any remaining allegation in Paragraph 38 of the Counterclaim.

39. Similarly, the District has not sued Dr. Roberts for lying or deceiving the District.

**ANSWER**: The District admits it has not sued Dr. Ian Roberts as of the date of this Answer. The District denies any remaining allegation in Paragraph 39 of the Counterclaim.

40. Instead, the District's sole focus has been on attempting to shift blame for its failures to JG Consulting.

**ANSWER**: The District denies Paragraph 40 of the Counterclaim.

41. The District's smear campaign is directly contrary to Norris's own public statements that "We all need to cool down the rhetoric. We should promote true discourse and facts, not spread misinformation meant to divide us."

**ANSWER**: The District denies Paragraph 41 of the Counterclaim.

42. But this is exactly what the District failed to do. The District did not promote true discourse; instead, it promptly spread disinformation about JG Consulting and refused to take accountability. It blamed everyone, except itself, for its blatant failures in deciding to hire Dr. Roberts.

**ANSWER**: The District denies Paragraph 42 of the Counterclaim.

43. Ironically, Norris went in to publicly state that "Our elected officials need to behave like role models for our children. Enough with the name-calling and misinformation that is meant to divide us." But the District failed to heed this advice in continuing with its smear campaign against JG Consulting.

**ANSWER**: The District admits Norris made the quoted statement. The District denies all remaining allegations in Paragraph 43 of the Counterclaim.

44. Contrary to the District's defamatory statements, the reality is that the District failed to comply with the legal requirement to verify Dr. Roberts' immigration status and work authorization status.

**ANSWER**: Paragraph 44 asserts a legal averment to which no response is required. To the extent a response is required, the District denies Paragraph 44 of the Counterclaim.

45. In fact, Section 12 of the Agreement requires the District to comply with all state and federal laws. The District failed to so do when it selected and hired Dr. Roberts and failed to confirm his immigration status or work authority status (which only the District, not JG Consulting, could do as Dr. Roberts' direct employer).

**ANSWER**: The District admits Section 12 of the Agreement states that "[b]oth parties agree to comply with all applicable Federal and Iowa laws governing their relationship or the

transaction contemplating under this Agreement." The District denies all remaining allegations in Paragraph 45 of the Counterclaim.

46. The District had the legal duty and obligation to verify Dr. Roberts' immigration status and work authorization as his employer, and it apparently failed to do so.

**ANSWER**: Paragraph 46 asserts a legal averment to which no response is required. To the extent a response is required, the District denies Paragraph 46 of the Counterclaim.

47. JG Consulting legally could not, as the non-hiring entity, confirm Dr. Roberts' immigration or work-authorization status. That is the legal duty and obligation of the employer, Des Moines Independent Community School District.

**ANSWER**: Paragraph 47 asserts a legal averment to which no response is required. To the extent a response is required, the District denies Paragraph 47 of the Counterclaim.

48. Further, contrary to the District's misrepresentations, JG Consulting did engage a third-party company to conduct a background check on Dr. Roberts, which it shared with the District before it decided to employ him.

**ANSWER**: The District admits upon information and belief that JG Consulting hired Baker Eubanks to conduct a limited background check of Dr. Roberts. The District denies all remaining allegations in Paragraph 48 of the Counterclaim.

49. That background check showed Dr. Roberts had a criminal case from 2021 for the unlawful presence of a loaded firearm in a vehicle.

**ANSWER**: The District admits Paragraph 49 of the Counterclaim.

50. JG Consulting also disclosed to the District before it hired Dr. Roberts that he had not obtained a PhD degree from Morgan State University.

**ANSWER**: The District denies Paragraph 50 of the Counterclaim.

51. Despite these disclosures, the District decided to hire Dr. Roberts as its superintendent.

**ANSWER**: The District admits it decided to hire Dr. Roberts. The District denies all remaining allegations in Paragraph 51 of the Counterclaim.

52. JG undoubtedly all [sic] disclosed to the District all "known information of a positive or native nature regarding candidates for the Superintendent position."

**ANSWER**: The District denies Paragraph 52 of the Counterclaim.

53. Thus, the District's defamatory statements to the contrary are demonstrably false.

**ANSWER**: The District denies Paragraph 53 of the Counterclaim.

54. Rather than take responsibility for its actions, the District has decided to deflect accountability and blame JG Consulting for the District's failures.

**ANSWER**: The District denies Paragraph 54 of the Counterclaim.

55. The District has publicly defamed JG Consulting with lies and false allegations.

**ANSWER**: The District denies Paragraph 55 of the Counterclaim.

56. Unfortunately, one of the aims of this defamation campaign was to mislead the District's constituents.

**ANSWER**: The District denies Paragraph 56 of the Counterclaim.

57. The District's campaign of defamation has led to devastating losses to JG Consulting for which the District is liable.

**ANSWER**: The District denies Paragraph 57 of the Counterclaim.

58. Recently, when the legislature conducted a public hearing into the District's failures with respect to the hiring of Dr. Roberts, the District was forced to publicly admit for the first time that it bears responsibility for Dr. Roberts' hiring.

**ANSWER**: The District denies Paragraph 58 of the Counterclaim.

59. In fact, according to a report from the District's own lawyer, the District's defamatory statements are false: "Board Chair Kimberly Martorano shared findings from a private investigation in Roberts' hiring process during a House Education Committee meeting Wednesday. She said the investigator found there was no way the board could have known Roberts' immigration status and that background checks would not have revealed it." As the new Board Chair admitted: "The background check would not have revealed these immigration issues to the board because they did not result in a criminal charge until after his arrest."

**ANSWER**: The District admits Kimberly Martorano stated "The background check would not have revealed these immigration issues to the board because they did not result in a criminal charge until after his arrest." The District denies all remaining allegations in Paragraph 59 of the Counterclaim.

60. Unfortunately, this is mea culpa is a little too late.

**ANSWER**: Paragraph 60 of the Counterclaim does not allege any facts against the District and therefore no response is required. To the extent a response is required, the District denies Paragraph 60.

61. The District's defamatory smear campaign against JG Consulting has already caused devastating financial and reputational harm for which it seeks relief.

**ANSWER**: The District denies Paragraph 61 of the Counterclaim.

**COUNT I – DEFAMATION**

62. JG Consulting incorporates by reference all preceding paragraphs.

**ANSWER**: The District refers to and incorporates its responses to Paragraphs 1 through 61 as though fully set forth herein.

63. The public statements made by the Des Moines Independent Community School District specifically referred to JG Consulting and were understood by the recipients to refer to JG Consulting.

**ANSWER**: The District denies Paragraph 63 of the Counterclaim.

64. The District published the above-referenced statements of fact about JG Consulting, including through the District school board members and agents.

**ANSWER**: The District denies Paragraph 64 of the Counterclaim.

65. The public statements made by the District were of such a nature that harmed the reputation of JG Consulting and operated to deter current and future commercial relationships.

**ANSWER**: The District denies Paragraph 65 of the Counterclaim.

66. The District published the false statements about JG Consulting with actual malice, even though they knew and recklessly disregarding that they were false.

**ANSWER**: The District denies Paragraph 66 of the Counterclaim.

67. The District's statements are reasonably understood to be statements of fact about JG Consulting, and were understood by people to saw, heard, and read them to be statements of fact about JG Consulting.

**ANSWER**: The District denies Paragraph 67 of the Counterclaim.

68. The District's statements are false. JG Consulting did not fail its duty to properly vet candidates for the District; JG Consulting did not fail to bring all known information of a positive or negative nature to the District; JG Consulting did not fail to do its job; and JG Consulting did not mislead the District about Dr. Roberts or fail to disclose any known information about him.

**ANSWER**: The District denies Paragraph 68 of the Counterclaim.

69. The statements constitute defamation per se, as they directly call into question JG Consulting's competency or fitness in their trade or profession. *See Cap. Ideas, LLC v. Springboard Adver., LLC*, No. 20-0296, 2021 WL 4592831 (Iowa Ct. App. October 6, 2021).

**ANSWER**: The District denies Paragraph 69 of the Counterclaim.

70. The District has no applicable privilege or legal authorization to make these false and defamatory statements.

**ANSWER**: The District denies Paragraph 70 of the Counterclaim.

71. The District's defamatory statements, whether taken individually or together in their cumulative impact, significantly damaged JG Consulting in the various ways described herein.

**ANSWER**: The District denies Paragraph 71 of the Counterclaim.

72. Because the statement constitutes defamation per se, damages to JG Consulting's reputation are presumed by law. *See Cap. Ideas, LLC v. Springboard Adver., LLC*, No. 20-0296, 2021 WL 4592831 (Iowa Ct. App. October 6, 2021).

**ANSWER**: The District denies Paragraph 72 of the Counterclaim.

73. The defamatory statements impute serious misconduct to JG Consulting and also malign JG Consulting in the conduct of its business or trade.

**ANSWER**: The District denies Paragraph 73 of the Counterclaim.

74. The District's statements have exposed JG Consulting to extreme hatred and contempt.

**ANSWER**: The District denies Paragraph 74 of the Counterclaim.

75. For JG Consulting – whose business is assisting school districts in their search of superintendents – the defamatory statements made by the District have significant damaged JG Consulting's business and impugned JG Consulting's integrity, honesty, ethics or professionalism.

**ANSWER**: The District denies Paragraph 75 of the Counterclaim.

76. The District's statements were calculated to – and did, in fact – provoke outrage and cause JG Consulting enormous harm.

**ANSWER**: The District denies Paragraph 76 of the Counterclaim.

77. Alternatively, the statements are actionable libel per quod as one may also refer to facts or circumstances beyond the words actually used to establish the defamation.

**ANSWER**: The District denies Paragraph 77 of the Counterclaim.

78. Notwithstanding Iowa law's recognition of presumed damages, as a direct and proximate result of the District's publication, JG Consulting has suffered special damages, including but not limited to lost customers, loss of future business opportunities, lost profits, loss of goodwill, loss of reputation, and JG Consulting's enterprise value has been irreparably damaged.

**ANSWER**: The District denies Paragraph 78 of the Counterclaim.

79. Pursuant to Iowa Code § 668A.1, the conduct of the District constitutes a willful and wanton disregard for the rights or safety of JG Consulting.

**ANSWER**: The District denies Paragraph 79 of the Counterclaim.

80. JG Consulting is also entitled to punitive damages because the District's defamatory statements were accompanied with malice, wantonness, and a conscious desire to cause injury.

**ANSWER**: The District denies Paragraph 80 of the Counterclaim.

81. The District purposefully made the statements heedlessly and with reckless and willful indifference to JG Consulting's rights.

**ANSWER**: The District denies Paragraph 81 of the Counterclaim.

82. The District is entitled to punitive damages because the District published the defamatory statements about JG Consulting with actual malice.

**ANSWER**: The District denies Paragraph 82 of the Counterclaim.

83. An award of punitive damages is necessary to punish and/or deter the District and others from like conduct in the future.

**ANSWER**: The District denies Paragraph 83 of the Counterclaim.

WHEREFORE, the Des Moines Independent Community School District respectfully requests that the Counterclaim of One-Fourth Consulting, LLC d/b/a JG Consulting be dismissed with prejudice, that the District be awarded the costs and disbursements incurred in defense of this action, and that the District be granted any other relief to which it may be entitled.

## GENERAL DENIAL

To the extent the District has not expressly admitted any allegations in the Counterclaim, they are denied.

## ADDITIONAL AND AFFIRMATIVE DEFENSES

1. Counterclaim Plaintiff fails to state a claim upon which relief can be granted.

2. No action taken by the District with respect to Counterclaim Plaintiff was done with malice or any willful, wanton, or reckless disregard for Counterclaim Plaintiff's rights or with the intention of violating state or federal laws.

3. An award of punitive damages would violate the District's right to substantive and procedural Due Process under the Fourteenth Amendment of the United States Constitution and/or the Iowa State Constitution; violate the District's right of protection against Excessive Fines as provided in the Eighth Amendment of the United States Constitution and/or the Iowa State Constitution; and fails to state a cause of action supporting punitive damages relief.

4. The sole proximate cause of any injury Counterclaim Plaintiff may have experienced is its own conduct.

5. Some or all of Counterclaim Plaintiff's claims are barred by the doctrine of unclean hands.

6. Although the District denies making any defamatory statement, any allegedly defamatory statement was true or substantially true.

7. Although the District denies making any defamatory statement, any alleged defamatory statement was protected by qualified privilege.

8. Although the District denies making any defamatory statement, any alleged defamatory statement was protected by litigation privilege.

9. Although the District denies making any defamatory statement, any alleged defamatory statement was protected by a fair comment or fair report privilege.

10. Although the District denies making any defamatory statement, any alleged defamatory statement was protected as a privileged statement to a legislative proceeding.

11. Although the District denies making any defamatory statement, any alleged defamatory statement was protected by absolute privilege.

12. Although the District denies making any defamatory statement, any alleged defamatory statement was protected opinion.

13. Although the District denies making any defamatory statement, any alleged defamatory statement was made regarding a public figure or limited public figure.

14. Although the District denies making any defamatory statement, any alleged defamatory statement was a matter of public concern.

15. Although the District denies making any defamatory statement, any alleged defamatory statement was not defamatory per se nor defamatory.

16. Although the District denies making any defamatory statement, to the extent JG Consultant alleges statements were made unrelated to District business, the District is not liable.

17. The District is immune from some or all liability under the discretionary function immunity provision of the Iowa Municipal Tort Claims Act, Iowa Code Chapter 670.

18. The District is immune from some or all liability under the provision in the Iowa Municipal Tort Claims Act, Iowa Code Chapter 670, for officials exercising due care in execution of statutes, ordinances, or regulations.

19. The District is immune from some or all damages claimed by Plaintiff under the Iowa Municipal Tort Claims Act, Iowa Code Chapter 670.

The District reserves the right to plead other and additional defense as they are discovered.

## JURY DEMAND

Counterclaim Defendant Des Moines Independent Community School District respectfully requests a trial by jury on all issues involved herein.

/s/ Katie L. Graham, AT001093
/s/ Brianna L. Long, AT0013958
/s/ Dana W. Hempy, AT0014934
NYEMASTER GOODE, P.C.
700 Walnut, Ste. 1300
Des Moines, IA 50309
Telephone:  (515) 283-3100
Facsimile:  (515) 283-8045
Email:  klgraham@nyemaster.com
Email:  bllong@nyemaster.com
Email:  dhempy@nyemaster.com

ATTORNEYS FOR COUNTERCLAIM
DEFENDANT

## CERTIFICATE OF SERVICE

  The undersigned certifies that on March 11, 2026 I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification to the following CM/ECF system participants:

Jason M. Craig
AHLERS & COONEY PC
100 Court Ave., Ste. 600
Des Moines, IA 50309
jcraig@ahlerslaw.com

ATTORNEYS FOR DES MOINES
INDEPENDENT SCHOOL DISTRICT

Mark W. Thomas
Benjamin T. Erickson
GREFE & SIDNEY PLC
500 E Court Avenue, Ste. 200
Des Moines, IA 50309
mthomas@grefesidney.com
berickson@grefesidney.com

Joshua a. Romero
Sean F. Gallagher
JACKSON WALKER LLP
100 Congress Avenue, Ste. 1100
Austin, TX 78701
jromero@jw.com
sgallagher@jw.com

Thomas J. Joensen
Tyler R. Smith
GORDON REES LLP
666 Grand Avenue, Ste. 1701
Des Moines, IA 50309
tjoensen@grsm.com
trsmith@grsm.com

ATTORNEY FOR ONE-FOURTH
CONSULTING, LLC

   /s/ Katie Graham