**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| DES MOINES INDEPENDENT COMMUNITY SCHOOL DISTRICT,<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>ONE-FOURTH CONSULTING, LLC d/b/a JG CONSULTING,<br><br>Defendant/Counterclaim Plaintiff. | CASE NO. 4:25-cv-0430-RGE-HCA |
| ONE-FOURTH CONSULTING, LLC d/b/a JG CONSULTING,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>BAKER-EUBANKS, INC.,<br><br>Third-Party Defendant. | **MEMORANDUM OF LAW IN SUPPORT OF THE 28 U.S.C. § 1404(a) MOTION TO TRANSFER VENUE BY THIRD-PARTY DEFENDANT BAKER-EUBANKS, INC.**<br><br>***Oral Argument Requested*** |

## TABLE OF CONTENTS

INTRODUCTION ........................................................ 1

FACTUAL BACKGROUND ........................................................ 4

LEGAL STANDARD ........................................................ 12

ARGUMENT ........................................................ 13

A. The Extensive Pretrial Publicity Surrounding This Matter Warrants Transfer From The Central Division. ........................................................ 13

i. Due Process Entitles BEI To A Fair Trial Before An Impartial Jury. ........................................................ 13

ii. The Scope And Nature Of The Pretrial Media Coverage Creates A Substantial Risk Of Prejudice In The Central Division. ........................................................ 14

iii. The School District's Prominence and Taxpayer Ramifications Within The Community Amplifies The Risk Of Juror Bias. ........................................................ 14

B. The Court Should Reserve Ruling on BEI's Motion Until the Pretrial Conference. ............ 15

CONCLUSION ........................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Standard, Inc. v. Bendix Corp.*,
487 F. Supp. 254 (W.D. Mo. 1980) ....................1, 12

*Hanning v. New England Mutual Life Insurance Co.*,
710 F. Supp. 213 (S.D. Ohio 1989) ....................1, 13, 15

*Landis v. North American Co.*,
299 U.S. 248 (1936)....................15

*McGraw-Edison Co. v. Van Pelt*,
350 F.2d 361 (8th Cir. 1965) ....................1, 12

*Patterson v. People of State of Colorado*,
205 U.S. 454 (1907)....................13

*Polk County, Iowa v. Populous, Inc.*,
No. 4:11-cv-00235, 2011 WL 13233189 (S.D. Iowa Oct. 25, 2011) ....................13, 14, 15

*Sheppard v. Maxwell*,
384 U.S. 333 (1966)....................13

*Terra Int'l, Inc. v. Mississippi Chemical Corp.*,
119 F.3d 688 (8th Cir. 1997) ....................14

*U.S. v. Blom*,
242 F.3d 799 (8th Cir. 2001) ....................1

*USA v. Roberts*,
No. 4:25-cr-00124-RGE-HCA (S.D. Iowa Oct. 1, 2025), ECF No. 1....................1, 2, 4

*Withrow v. Larkin*,
421 U.S. 35 (1975)....................13

*Zimmer, Inc. v. Zimmer Medizinsystems AG*,
No. 3:19-CV-405-DRL-MGG, 2022 WL 21697168 (N.D. Ind. Dec. 5, 2022)....................12, 14

**Statutes**

28 U.S.C. § 1332 ..........4

28 U.S.C. § 1404(a) ..........1, 4, 12, 13, 14

28 U.S.C. § 1404(b) ..........12, 13

Tex. Civ. Prac. & Rem. Code § 17.042 ..........4

**Other Authorities**

DES MOINES PUBLIC SCHOOLS, *A Second Century of Excellence in Education*, https://www.dmschools.org/about/ (last visited July 27, 2026)..........3, 10

Des Moines Public Schools, *Announcements on Former Superintendent Roberts*, BLOG@DMPS (Oct. 3, 2025, 9:30 AM), https://www.dmschools.org./2025/09/announcements-on-detention-of-ian-roberts/. ..........5

DMPS-TV, *September 26, 2025 DMPS Press Conference*, YOUTUBE (Sept. 26, 2025), https://www.youtube.com/watch?v=rjM4hrUCgo8. ..........4

[redacted] ..........10

[redacted] ..........11

[redacted] ..........3

U.S. Immigration and Customs Enforcement, *ICE Arrests Criminal Alien Serving as Des Moines Public Schools Superintendent; Prior Weapons Charges and In Possession of Loaded Handgun at Time of Arrest*, ICE NEWSROOM (Sept. 26, 2025), https://www.ice.gov/news/releases/ice-arrests-criminal-alien-serving-des-moines-public-schools-superintendent-prior..........4, 9

We Are Iowa Local 5 News, *Ian Roberts: Educator, visionary, criminal*, YOUTUBE, at 25:29 (May 29, 2026), https://www.youtube.com/watch?v=7i7pWZUSWH4 ..........2

**INTRODUCTION**

This lawsuit arises from one of the most publicized controversies in recent Iowa education history. Third-Party Defendant Baker-Eubanks, Inc. ("BEI") brings this Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (the "Motion") now, in good faith, to preserve its request for transfer and to place the Court on notice of the substantial concerns raised by the extraordinary pretrial publicity surrounding the controversy giving rise to this litigation.

Courts have recognized that venue objections based on prejudicial publicity should be raised at the earliest practicable opportunity rather than deferred until the eve of trial.[1] However, other courts have recognized that a motion to transfer venue should be brought and heard after the record is fully developed and voir dire is about to begin.[2] Because of this conflict of authority, BEI has brought this Motion now, but respectfully requests that the Court defer hearing this Motion until the pretrial conference, when the parties can present a more complete record concerning the extent and impact of that publicity.

On September 26, 2025, United States Immigration and Customs Enforcement ("ICE") arrested Ian Andre Roberts ("Roberts"),[3] the then Superintendent of Des Moines Independent Community Public Schools (the "School District").[4] Less than a week later, the United States filed

---

[1] *See McGraw-Edison Co. v. Van Pelt*, 350 F.2d 361, 363 (8th Cir. 1965) (upholding denial of motion to transfer venue for timeliness concerns); *American Standard, Inc. v. Bendix Corp.*, 487 F. Supp. 254, 261 (W.D. Mo. 1980) ("if the passage or delay would unduly prejudice the opposing party or parties, or the filing of the motion for transfer is a dilatory tactic, a district court may deny the motion for transfer").

[2] *See U.S. v. Blom*, 242 F.3d 799, 804 (8th Cir. 2001) (it is proper and preferable for courts to await voir dire before ruling on a motion to transfer venue); *see also Hanning v. New England Mutual Life Insurance Co.*, 710 F. Supp. 213, 215 (S.D. Ohio 1989) ("A court may properly defer ruling on the motion for change of venue until the effect of any adverse publicity can be determined at voir dire of the potential jurors.").

[3] The arrest of Ian Andre Roberts and the School District's subsequent lawsuit is hereby referred to as the "Roberts Controversy."

[4] U.S. Immigration and Customs Enforcement, *ICE Arrests Criminal Alien Serving as Des Moines Public Schools Superintendent; Prior Weapons Charges and In Possession of Loaded*

its criminal complaint against Roberts.[5] Subsequently, Roberts plead guilty (i) to making a False Statement for Employment pursuant to 18 U.S.C. § 1546(b)(3), and (ii) for being an illegal alien in possession of firearms pursuant to 18 U.S.C. §§ 922(g)(5) and 924(a)(8).[6]

The media storm followed.

Local news organizations reported extensively on Roberts' arrest, criminal proceedings, educational credentials, employment history, and representations made during the hiring process. National and international outlets did the same. *See* Davis Decl., Exhs. 2–88. Even today, the press is following the Roberts Controversy. *See* We Are Iowa Local 5 News, *Ian Roberts: Educator, visionary, criminal*, YOUTUBE, at 25:29 (May 29, 2026), https://www.youtube.com/watch?v=7i7pWZUSWH4. In the Channel 5 expose, Roberts' counsel references calls from "judges" offering to support Roberts. *Id.*

The story did not stop with Roberts. Public attention quickly shifted to the circumstances surrounding his recruitment, vetting, and hiring. *See generally* Davis Decl., Exhs. 2–88. The superintendent search process became the subject of immense public debate and the conduct of the entities involved in that process became the subject of public scrutiny.[7] *Id*. News organizations

---

*Handgun at Time of Arrest*, ICE NEWSROOM (Sept. 26, 2025), https://www.ice.gov/news/releases/ice-arrests-criminal-alien-serving-des-moines-public-schools-superintendent-prior.

[5] Criminal Complaint at 6, *USA v.* Roberts, No. 4:25-cr-00124-RGE-HCA (S.D. Iowa Oct. 1, 2025), ECF No. 1.

[6] Plea Agreement, *USA v. Roberts*, Case No. 4:25-mj-00630-RGE-HCA (S.D. Iowa Jan. 21, 2026), ECF. No. 35.

[7] This extensive public debate included criticism of Diversity, Equity, and Inclusion ("DEI") initiatives and the School District's use of minority-owned businesses for the superintendent search. As a minority-owned business, BEI must contend with the risk that this wave of blame-shifting and politicized commentary has prejudiced its right to a fair trial. Notably, local Reddit discussions expressly attributed responsibility for the Roberts' Controversy to the fact that JG Consulting and BEI are minority-owned businesses, suggesting that their status as such compromised their decision-making. *See* Davis Decl., Exh. 64, at p. 12 Redacted

[redacted]

*Id.*

On September 28, 2025, the [redacted] publicly identified BEI as the entity that performed the comprehensive background investigation referenced by the School District during the superintendent hiring process.[8] Thereafter, BEI became a recurring subject of public reporting and commentary concerning Roberts' hiring. *See* Davis Decl., Exhs. 1–4, 6–7, 12, 15, 17, 19, 37, 47, 53, 55, 59, 63, 66, 86.

Due to the extensive reporting concerning Roberts, the superintendent search process, the background investigation, and the parties to this litigation, BEI has substantial concerns regarding the ability to empanel an impartial jury from the Central Division's jury pool. These concerns are amplified by the vital role the School District occupies within the community as Iowa's largest public school district, serving more than 30,000 students and employing nearly 5,000 individuals. *A Second Century of Excellence in Education*, DES MOINES PUBLIC SCHOOLS, https://www.dmschools.org/about/ (last visited July 27, 2026).

Simply put, if the trial is held in the Central Division of the Southern District of Iowa, BEI will be faced with a majority of potential jurors who hold personal interests in the outcome of the dispute, both as taxpayers and individuals with ties to the School District. Thus, a transfer of venue to one of the following proposed United States District Court venues is warranted: (i) the Western

---

[redacted] (emphasis added).

[8] [redacted] Davis Decl., Exh. 3.

Division of the Southern District of Iowa; (ii) the Eastern Division of the Southern District of Iowa; or (iii) the Eastern District of Texas.[9]

**FACTUAL BACKGROUND**

On September 26, 2025, Ian Andre Roberts ("Roberts") was taken into custody by United States Immigration and Customs Enforcement ("ICE"). Criminal Complaint at 6, *USA v. Roberts*, No. 4:25-cr-00124-RGE-HCA, (S.D. Iowa Oct. 1, 2025), ECF No. 1.[10] *See infra* n. 4.

Within hours of Roberts' arrest, the School District held a press conference (the "School District Press Conference") to address the matter. *See* DMPS-TV, *September 26, 2025, DMPS Press Conference*, YOUTUBE (Sept. 26, 2025), https://www.youtube.com/watch?v=rjM4hrUCgo8.[11]

In addition to its press release, the School District issued statements concerning Roberts' employment and provided an "action plan" to replace Roberts as superintendent. Declaration of Aiyana Davis ("Davis Decl."), Exhibit ("Exh.") 1, at p. 6. The School District maintained a

---

[9] Pursuant to 28 U.S.C. § 1404(a), a district court may transfer a civil action, "[f]or the convenience of parties and witnesses, in the interest of justice," to any district where the action "might have been brought." Here, this Action could have been brought in the Eastern District of Texas because: (1) Third-Party Plaintiff One-Fourth Consulting, LLC d/b/a JG Consulting ("JG Consulting") is a Texas limited liability company with its principal place of business in Georgetown, Texas; and (2) the dispute between the School District and JG Consulting arises from contractual obligations and conduct occurring in Texas. Accordingly, the Eastern District of Texas may exercise personal jurisdiction over JG Consulting under Texas's long-arm statute, and subject-matter jurisdiction exists pursuant to 28 U.S.C. § 1332 because the parties are diverse and the School District's alleged amount in controversy exceeds $75,000. *See* Tex. Civ. Prac. & Rem. Code § 17.042; 28 U.S.C. § 1332. Moreover, BEI rendered its report to JG Consulting in

[10] Roberts was subsequently charged for the possession of firearms as an illegal alien, in violation of 18 U.S.C. §§ 922(g)(5) and 925(a)(8). Criminal Complaint at p. 1, *USA v. Roberts*, No. 4:25-cr-00124-RGE-HCA (S.D. Iowa Oct. 1, 2025), ECF No. 1.

[11] The School District Press Conference is publicly available through multiple streaming platforms, including the School District's YouTube Channel.

webpage devoted to these announcements concerning Roberts and the fallout from his hiring.[12] The School District's announcement generated immediate media attention that pervaded all media platforms, including social media platforms such as Reddit. *See* Davis Decl., Exhs. 64–76. Local, national, and international news organizations reported on Roberts' detention, immigration status, and employment as superintendent of Iowa's largest public school district. *See, e.g.*, Davis Decl., Exhs. 3–63, 77–88.

On September 28, 2025, the [redacted] published an article specifically identifying BEI as the third-party vendor that conducted the comprehensive background investigation referenced by the School District. Davis Decl., Exh. 3, at p. 2. The article discussed BEI's role in the hiring process and publicly associated BEI with the broader controversy surrounding Roberts' employment by the School District.[13] Unsurprisingly, BEI began receiving public submissions expressing outrage and directing responsibility to BEI for the Roberts Controversy:

| **Date & Time Received** | **Content of Email Submissions to BEI** | **Citation** |
|---|---|---|
| September 28, 2025, at 7:58 AM | [redacted] | Cockerham Decl., at pp. 1–3. |

---

[12] *See generally* [redacted] Davis Decl., Exh. 1.

[13] Public commentary and debate on who is to blame for the Roberts Controversy was also directly impacted by the Announcement. *See* Davis Decl., Exh. 72, at p. 5, ([redacted]

| | | |
|---|---|---|
| September 28, 2025, at 8:50 AM | Redacted [redacted] | Cockerham Decl., at pp. 4–6. |
| September 28, 2025, at 11:01 AM | Redacted [redacted] | Cockerham Decl., at pp. 7–9. |
| September 28, 2025, at 2:14 PM | Redacted [redacted] | Cockerham Decl., at pp. 10–12. |
| September 28, 2025, at 7:01 PM | Redacted [redacted] | Cockerham Decl., at pp. 13–15. |
| September 28, 2025, at 7:11 PM | Redacted [redacted] | Cockerham Decl., at pp. 16–18. |

| | | |
|---|---|---|
| September 29, 2025, at 12:58 PM | Redacted [redacted] | Cockerham Decl., at pp. 19–21. |
| September 30, 2025, at 4:47 PM | Redacted [redacted] | Cockerham Decl., at pp. 22–24. |
| October 1, 2025, at 5:00 PM | Redacted [redacted] | Cockerham Decl., at pp. 25–27. |
| October 4, 2025, at 12:39 PM | Redacted [redacted] | Cockerham Decl., at pp. 28–30. |
| October 4, 2025, at 12:57 PM | Redacted [redacted] | Cockerham Decl., at pp. 31–32. |
| October 4, 2025, at 2:38 PM | Redacted [redacted] | Cockerham Decl., at pp. 33–35. |
| November 1, 2025, at 11:37 AM | Redacted [redacted] | Cockerham Decl., at pp. 36–38. |

Affidavit of Kim Cockerham, Exh. A.[14] Additionally, BEI was subjected to a considerable number of hostile and inflammatory voicemail messages from members of the public. These communications frequently contained profane, accusatory, and emotionally charged language directed at BEI and its leadership. Representative examples of the language contained in these voicemails include the following:

> Redacted [redacted]

> Redacted [redacted]

> Redacted [redacted]

Cockerham Decl., Exh. B. These communications reflect the intensity of public sentiment surrounding this dispute and demonstrate the extent to which individuals exposed to information concerning this matter have expressed strong and, at times, highly emotional views regarding the parties and issues involved.[15]

---

[14] The Affidavit of Kim Cockerham, the CEO of BEI, is hereinafter cited as "Cockerham Decl. []."

[15] While BEI does not presently have sufficient information to conclude that these callers will necessarily comprise of the jury pool, the messages are probative of the strong emotions, preconceived opinions, and community sentiment that presently exist regarding the issues and parties involved in this litigation. Such evidence strongly underscores the need for additional inquiry into prospective juror bias through questionnaires, expert consultation, and other venue-related discovery.

In the days and weeks that followed, the School District issued a series of public statements regarding Roberts' employment, qualifications, immigration status, and its response to the controversy. *Id.* The School District ultimately maintained a dedicated webpage titled [redacted] which served as a central source for continuing updates regarding the matter. *See generally* Davis Decl., Exh. 1.

The School District's Announcements fueled the media fire. The story quickly became a matter of public debate throughout the Des Moines metropolitan area. As additional information became public, media attention expanded significantly. Media Reports examined Roberts' educational credentials, including questions concerning claimed degrees and professional achievements. *See* Davis Decl., Exhs. 2–63. As the media frenzy intensified, local news stories were shared repeatedly on social media platforms, including Reddit, where extensive public debate and commentary further amplified exposure to information about the case throughout the community. Davis Decl., Exhs. 64–76.

Multiple outlets have devoted continuing coverage to Roberts' background, qualifications, employment history, educational credentials, and professional representations. *See* Davis Decl., Exhs. 2–63.

The *Des Moines Register*, Iowa's largest newspaper and principal news source within the Des Moines area, has published numerous articles concerning Roberts' detention, his background and qualifications, the superintendent hiring process, actions taken by the School Board, student responses, Roberts' resignation, and questions regarding the vetting procedures used during the hiring process. *See* Davis Decl., Exhs. 2–16. Among other articles, the Des Moines Register published reports regarding Roberts' detention on September 26, 2025; biographical information concerning Roberts and the circumstances surrounding his employment with the School District;

the status of his professional licensure; student demonstrations relating to the controversy; school board meetings; and updates on the claims asserted in the present lawsuit. *Id.*

On October 3, 2025, the School District officially announced its intention to pursue legal claims against One-Fourth Consulting, LLC d/b/a JG Consulting ("JG Consulting"). *See* Davis Decl., Exh. 1, at p. 1.

In announcing the legal claims against JG Consulting, the School District's Board Chair, Jackie Norris, linked the Roberts Controversy and the School District's lawsuit to potential consequences for Iowa taxpayers[16], signaling the broader public and fiscal interests at stake. *See* Davis Decl., Exhs. 1, 19. [17] Specifically, Norris stated Redacted [redacted] *See* Davis Decl., Exh. 19, at p. 2.

The School District is "the largest provider of public education in Iowa, with more than 30,000 students and nearly 5,000 teachers and staff at work in more than 60 schools throughout the community." DES MOINES PUBLIC SCHOOLS, *A Second Century of Excellence in Education*, https://www.dmschools.org/about/ (last visited July 27, 2026). Given the size of the district and its

---

[16] Local Reddit forums indicate that the public took immediate notice to the direct implications of the Roberts Controversy on its taxpayer dollars. *See* Davis Decl., Exh. 65:

Redacted [redacted]

[17] Redacted [redacted] Davis Decl., Exh. 19.

role within the community, the prospective jury pool will undoubtedly include current and former students of the School District, parents and guardians of current and former students, current and former School District employees, and individuals with family members, friends, or other close connections to the School District.

Stated in another way, given that the School District serves more than 30,000 students and employs nearly 5,000 individuals, a substantial number of prospective jurors are likely to have some direct or indirect connection to the School District through their own educational history, employment, family relationships, or community involvement. *Id.*

Further adding to the inflammatory nature of media coverage, the School District Redacted [redacted][18] Davis Decl., Exh. 12, at p. 1.

After the investigative report became public, further debate ensued among the greater Des Moines community followed on social media platforms, including a dedicated local Des Moines Reddit thread. *See* Davis Decl., Exh. 72.

Together, the extensive media coverage and public commentary show great concern to juror impartiality and warrants a transfer of venue to a suitable alternative district, pending further venue-specific discovery.

---

[18] Redacted [redacted] Davis Decl., Exh. 12.

**LEGAL STANDARD**

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action "[f]or the convenience of parties and witnesses, in the interest of justice," to any district where the action could have been brought or to any district to which all parties have consented. Similarly, under 28 U.S.C. § 1404(b), "[u]pon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature . . . may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district."

The decision whether to transfer venue under § 1404 rests within the sound discretion of the trial court and requires a flexible, case-specific analysis of the particular facts and circumstances presented. *Zimmer, Inc. v. Zimmer Medizinsystems AG*, No. 3:19-CV-405-DRL-MGG, 2022 WL 21697168, at *2 (N.D. Ind. Dec. 5, 2022). Courts applying Section 1404(a) engage in an "individualized, case-by-case consideration of convenience and fairness," weighing the interests of the parties, witnesses, judicial economy, and the overall interests of justice. *Id.* Importantly, Section 1404(a) permits a "flexible and individualized" analysis that affords substantial discretion to the transferor court in determining whether transfer is appropriate. *Id.*

Although the statute does not provide an explicit deadline to bring such a motion, courts expect parties to seek such relief with reasonable promptness once the grounds supporting transfer become apparent. *Compare American Standard, Inc.*, 487 F. Supp. at 261 ("Section 1404(a) sets no time limit on when a motion to transfer can be made."), *with* McGraw-*Edison Co.*, 350 F.2d at 363 (a motion may be denied where substantial preparation for trial has already occurred in the selected forum, and the request is unduly delayed). Accordingly, "[a] party seeking a change of venue should move with reasonable promptness after the factors favoring a convenience transfer become evident." *Zimmer*, 2022 WL 21697168, at *2.

Where the requested transfer is between divisions within the same district, courts apply the same general considerations governing transfers under Section 1404(a), however such requests "are judged under a less demanding standard." *See Polk County, Iowa v. Populous, Inc.*, No. 4:11-cv-00235, 2011 WL 13233189, at *2 (S.D. Iowa Oct. 25, 2011); *see also Hanning*, 710 F. Supp. at 215 ("Intradivisional transfers pursuant to 28 U.S.C. § 1404(b) are discretionary transfers subject to the same analysis as under § 1404(a) but apparently judged by a less rigorous standard.")

## ARGUMENT

### A. The Extensive Pretrial Publicity Surrounding This Matter Warrants Transfer From The Central Division.

#### i. Due Process Entitles BEI To A Fair Trial Before An Impartial Jury.

The American justice system expects jurors to decide cases based on the evidence presented in court rather than what they have read in the newspaper, watched on television, or discussed in the community. Moreover, due process guarantees a fair trial before a fair tribunal. *Withrow v. Larkin*, 421 U.S. 35, 46 (1975). It likewise requires that a verdict rest upon the evidence introduced at trial, not information learned outside the courtroom. *Sheppard v. Maxwell*, 384 U.S. 333, 351 (1966).

As Justice Holmes observed more than a century ago, "[t]he theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." *Patterson v. People of State of Colorado*, 205 U.S. 454, 462 (1907). There is no question here that this case involves matters widely publicized across the Central Division. *See infra*, Factual Background, pp. 4–11. As the present evidence indicates, pervasive media has saturated the potential jury pool. This presents a genuine concern to BEI's right to a fair trial and warrant transfer.

**ii. The Scope And Nature Of The Pretrial Media Coverage Creates A Substantial Risk Of Prejudice In The Central Division.**

When determining whether transfer is warranted, courts evaluate two broad sets of factors: (1) convenience of the parties and witnesses; and (2) interests of justice. However, courts have considerable discretion in determining a § 1404(a) motion and may consider other factors. *Terra Int'l, Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 696 (8th Cir. 1997). While courts must consider both the convenience and interests of justice factors, it can grant or deny the motion based on any one of the factors where the evidence strongly weighs in favor of transfer. *Id.*

Importantly, Section 1404(a) "also allows for a 'flexible and individualized' analysis of the unique issues raised in a particular civil action, which places considerable discretion in the transferor court when deciding whether transfer is appropriate." *Zimmer*, 2022 WL 21697168, at *2. Such a flexible and individualized analysis is warranted here, where the pretrial publicity is rampant and demonstrates a substantial likelihood of a tainted jury pool.

**iii. The School District's Prominence and Taxpayer Ramifications Within The Community Amplifies The Risk Of Juror Bias.**

To overcome the presumption that members of the jury pool are impartial, "courts generally require the party seeking transfer to 'show saturating and inflammatory press coverage that would reach virtually all members of the jury pool and lead a court to conclude that the pool as a whole has been adversely influenced." *See Populous, Inc.*, 2011 WL 13233189 at *2 (S.D. Iowa Oct. 25, 2011) (quoting *Gotbaum v. City of Phoenix*, 617 F. Supp. 2d 878, 882 (D. Ariz. 2008)).

The existing media coverage demonstrates a grave concern that a major percentage of the perspective jury pool is subject to saturated and inflammatory press coverage. *See* Exhs. 2–63. The risk of prejudice is heightened by the School District's prominence within the community. *See infra* p. 10. Given the School District's size and reach, prospective jurors are likely to have some

personal, familial, educational, professional, or community connection to the School District. *Id.* The combination of sustained publicity, public scrutiny, and the School District's pervasive presence within the community raises legitimate questions regarding juror exposure and preconceived impressions concerning the subject matter of this litigation.

**B. The Court Should Reserve Ruling on BEI's Motion Until the Pretrial Conference.**

This Court has broad discretion to manage its docket and determine the timing of rulings on pending motions. *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936). In the venue-transfer context, courts may defer ruling where additional information concerning juror exposure and prejudice is necessary to evaluate whether transfer is warranted. Indeed, "a court may properly defer ruling on the motion for change of venue until the effect of any adverse publicity can be determined at voir dire of the potential jurors." *Hanning*, 710 F. Supp. at 215.

The current record demonstrates substantial public attention, extensive local media coverage, and significant community interest in the controversy underlying this litigation. Given the substantial publicity surrounding this matter, the Court should reserve ruling until a jury consultant has conducted an empirical assessment of community attitudes and juror exposure, thereby providing objective evidence directly relevant to the venue analysis. *See Populous, Inc.*, 2011 WL 13233189, at *2 (noting empirical data, such as a survey of the potential jury pool or polling, is necessary in addition to evidence of extensive media coverage).

In line with the Southern District's instruction in *Populous, Inc.*, BEI intends to further develop the record regarding juror exposure, community attitudes, and the potential impact of pretrial publicity on the prospective jury pool. 2011 WL 13233189, at *2. A more fully developed record will provide the Court with concrete evidence regarding the extent of juror familiarity with the underlying controversy and the feasibility of seating a fair and impartial jury in the Central Division.

BEI files this Motion now to preserve the issue to comply with the Eight Circuit precedent but requests that the Court hold the hearing on the Motion until the pretrial conference to present a fully developed record for the Court. In this way, the interests of justice and due process will be served.

## CONCLUSION

Baker-Eubanks, Inc. respectfully requests that the Court hold BEI's Motion to Transfer Venue in abeyance until the pretrial conference, permitting BEI to take additional discovery, including the retention of a jury consultant and development of juror questionnaires, and thereafter determine the Motion to Transfer Venue to either (1) the Western Division of the Southern District of Iowa; (2) the Eastern Division of the Southern District of Iowa; or (3) the Eastern District of Texas.[19]

Dated August 14, 2026

*/s/Aiyana M. Davis*
Frank A. Taylor, IA #AT0005489 / AT0016333
Conner R. Tieszen, IA #AT0014987
Aiyana M. Davis (admitted *Pro Hac Vice*)
LEWIS BRISBOIS BISGAARD & SMITH LLP
90 S. 7th Street, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 428-5000
Facsimile: (612) 428-5001
Email: Frank.Taylor@lewisbrisbois.com
Conner.Tieszen@lewisbrisbois.com
Aiyana.Davis@lewisbrisbois.com

*Attorneys for Baker-Eubanks, Inc.*

[19] BEI respectfully requests oral argument on this Motion. Good cause exists because the Motion raises significant questions concerning pretrial publicity, juror impartiality, and the appropriate venue for trial. An oral hearing will permit the parties to address the evidentiary record concerning publicity surrounding this matter and assist the Court in determining the appropriate course of action.

**CERTIFICATE OF SERVICE**

The undersigned certifies that on August 14, 2026, a copy of the foregoing was electronically filed with the Clerk of Court. All parties of record registered with the CM/ECF filing system will receive notification of such filing through CM/ECF, and they will also be provided to the individuals listed below via electronic mail:

Thomas J. Joensen, AT0003868
Tyler R. Smith, AT0013123
Alexander G. Scanlon, AT0016158
Gordan Rees Scully Mansukhani
1701 Ruan Center
666 Grand Avenue
Telephone: (515) 204-2845
Fax: (515) 724-5801
tjoensen@grsm.com
trsmith@grsm.com
ascanlon@grsm.com

Jason M. Craig (AT0001707)
AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309-2231
Telephone: 515/243-7611
Facsimile: 515/243-2149
jcraig@ahlerslaw.com

Mark W. Thomas, AT0007832
Benjamin T. Erickson, AT0012927
Grefe & Sidney, P.L.C.
500 E. Court Ave., Ste. 200
Des Moines, IA 50309
Telephone: 515/245-4300
Fax: 515/245-4452
mthomas@grefesidney.com
berickson@grefesidney.com
ascanlon@grsm.com

*Attorneys for Defendant/Third-Party Plaintiff One-Fourth Consulting, LLC d/b/a JG Consulting*

Katie L. Graham
Briana L. Long
Dana W. Hempy
Nyemaster Goode, P.C.
700 Walnut, Ste. 1300
Des Moines, IA 50309
Telephone: (515) 283-3100
Fax: (515) 283-8045
klgraham@nyemaster.com
bllong@nyemaster.com
dhempy@nyemaster.com

*Attorneys for Plaintiff/Counterclaim Defendant Des Moines Independent Community School District*

*/s/Aiyana M. Davis*________________
Aiyana M. Davis